Jennifer Rust Murray, WSBA #36983
Blythe H. Chandler, WSBA #43387
Attorneys for Plaintiff
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450
Email: jmurray@terrellmarshall.com
Email: bchandler@terrellmarshall.com

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELAINA REID, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| PREHIRED, LLC, MERATAS, INC, and JOSHUA JORDAN, | **JURY DEMAND REQUESTED** |
| Defendants. | |

## I.     NATURE OF THE CASE

1.      Plaintiff Elaina Reid is a 2018 high school graduate who lives in Spokane. Unfortunately, Ms. Reid was drawn into a fraudulent scheme that has left her with $30,000 in debt.

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 1

2.      Ms. Reid was close to receiving her associates degree at a local community college and thinking about applying to a program to become a surgery technician when she learned about Defendant Prehired LLC. Prehired's online program was supposed to give her the training she needed to make money as a software sales representative. Prehired also offered continuing education to help students employed as software sales representatives get promotions and move into managerial roles.

3.      Ms. Reid could not afford the $15,000 price tag to enroll in Prehired's course, but Prehired, through its founder and CEO Joshua Jordan, told her she could finance her training by entering into an income share agreement (ISA), which required her to pay 12.5% of any income exceeding $40,000 to Prehired for forty-eight months after she landed a job. Exhibit A. In exchange, Prehired agreed to provide Ms. Reid access to its training program called Prehired Science-Based Sales. Defendant Meratas, Inc. designed and implemented Prehired's ISA program. Two years after signing the ISA, Ms. Reid has paid $3,944.46 on her ISA. Ms. Reid was required to make those payments even though her income fell below the ISA's $40,000 minimum threshold for making payments.

1    4.    Washington law prohibits Defendants' conduct. *See* Wash. Rev. Code

2  § 28C.10 *et seq*. The statute requires private vocational schools like Prehired to be

3  licensed in order to, among other things, "conduct business of any kind" or "enter

4  into any contracts." Wash. Rev. Code § 28C.10.090. A note, instrument, or other

5  evidence of indebtedness or contract relating to payment for education is not

6  enforceable in the courts of the state of Washington by a private vocational

7  school or holder of the instrument unless the private vocational school was

8  licensed in Washington at the time the instrument was entered into. Wash. Rev.

9  Code § 28C.10.180.

10    5.    In addition, contracts relating to payment for education are voidable

11  at the option of the student if they state that the law of another state shall apply

12  or that the maker or any person liable on the contract consents to the jurisdiction

13  of another state. Wash. Rev. Code § 28C.10.170.

14    6.    Washington law also provides that it is an "unfair business practice"

15  for a private vocational school, among other things, (a) to fail to comply with the

16  terms of a student enrollment contract or agreement, (b) mislead prospective

17  students about their "probable earnings" following completion of the course of

18  study or about the total cost to complete the course, or (c) make or cause to be

19  made any statement or representation in connection with the offering of

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 3

1  education if the school or agent knows or reasonably should have known the

2  statement or representation to be false, substantially inaccurate, or misleading.

3  Wash. Rev. Code § 28C.10.110(2)(h).

4  7.  The statute also prohibits private vocational schools that have not

5  had at least one of its programs recognized by the Workforce Training and

6  Education Coordinating Board (WTECB) and their agents from inducing students

7  to obtain, specific consumer student loan products to fund education that

8  financially benefits any person or entity that has an ownership interest in the

9  institution, unless the institution can demonstrate to the agency that the student

10  has exhausted all federal aid options and has been denied noninstitutional private

11  commercial loan products. Wash. Rev. Code § 28C.10.050(3).

12  8.  A violation of the private vocational school statute affects the public

13  interest and is an unfair or deceptive act or practice in violation of the

14  Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020. Wash. Rev.

15  Code § 28C.10.210.

16  9.  Prehired, which is not listed among the private career schools that

17  hold up-to-date licenses under Wash. Rev. Code §28C.10.060, violated Wash. Rev.

18  Code § 28C.10.090 by entering into ISAs with Ms. Reid and others. The ISA that

19  Ms. Reid signed contains a choice of jurisdiction and venue clause that specifies

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 4

the United States District Court for the Southern District of New York and New

York state courts located in New York City, violating Wash. Rev. Code

§ 28C.10.170. The ISA also includes a "governing law" provision that specifies New

York state law. It too is illegal under Washington law.

10.     Prehired and Jordan violated Wash. Rev. Code § 28C.10.110 by

providing prospective students with misleading and deceptive testimonials,

endorsements and other information about Prehired's program, the earnings

students would obtain following graduation from the program, and the total cost

to complete the training program.

11.     Prehired, Meratas, and Jordan violated Wash. Rev. Code

§ 28C.10.050(3) by designing and implementing ISAs and then inducing students

like Ms. Reid to enter into ISAs to fund the Prehired training program without

ensuring that the students had exhausted all federal aid options and had been

denied noninstitutional private commercial loan products.

12.     Prehired, Meratas, and Jordan's unfair or deceptive conduct violated

both Wash. Rev. Code § 28C.10 *et seq.* and Washington's Consumer Protection

Act Wash. Rev. Code § 19.86 *et seq.*

13.     Because Prehired, Jordan, and Meratas's conduct violates

Washington law, Ms. Reid seeks to void her contract and the contracts of other

1   Washington residents who financed their Prehired training through an illegal ISA.

2   Ms. Reid also seeks reimbursement for the amounts she and others have paid to

3   Prehired and Meratas under the ISAs as well as treble damages, attorneys' fees,

4   and costs as available under Washington law.

5                    **II.    JURISDICTION AND VENUE**

6           14.    <u>Jurisdiction</u>. This Court has subject matter jurisdiction over all claims

7   asserted in this action pursuant to 28 U.S.C. §1332. The amount in controversy for

8   Ms. Reid's claims against Prehired, Jordan, and Meratas, exclusive of interest and

9   costs, exceeds $75,000.

10          15.    <u>Venue</u>. Venue in the Eastern District of Washington is proper

11  because Defendants Prehired, Meratas, and Jordan transact business in this

12  District and the events and transactions giving rise to Ms. Reid's claims took place

13  in this District. Ms. Reid executed the contracts with Prehired and Meratas in

14  Washington, received training information from Jordan in Washington, watched

15  Prehired's training videos in Washington, entered into an electronic funds

16  transfer agreement with Meratas in Washington, and paid money to Meratas

17  from her Washington bank account.

18

19

20
CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 6

1

### III.    PARTIES

2      16.      Plaintiff Elaina Reid at all relevant times has resided in Spokane,

3  Washington and has been a citizen of Washington. She is a "person" under Wash.

4  Rev. Code § 19.86.010(1).

5      17.      Defendant Prehired, LLC (Prehired) is a limited liability company and

6  is registered under the laws of the States of Delaware with its headquarters in

7  North Charleston, South Carolina. Prehired is a "private vocational school" under

8  Wash. Rev. Code § 28C.10.020(7) and is a "person" under Wash. Rev. Code §

9  19.86.010(1).

10      18.      Defendant Joshua Jordan (Jordan) is an individual residing in North

11  Charleston, South Carolina. Mr. Jordan is an "agent" under Wash. Rev. Code §

12  28C.10.020(2) because he owns an interest in Prehired and personally attempts to

13  secure Washington residents' enrollment in Prehired's training courses. Jordan is

14  an "agent" under Wash. Rev. Code § 28C.10.050(3) because he is an officer

15  working on behalf of Prehired. Jordan is a "person" under Wash. Rev. Code §

16  19.86.010(1).

17      19.      Defendant Meratas, Inc. (Meratas) is a corporation with

18  headquarters in Connecticut. Meratas is registered to do business in Washington

19  State. Meratas is an "agent" under Wash. Rev. Code § 28C.10.050(3) because it is

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 7

1  a contractor working on behalf of Prehired. Meratas is a "person" under Wash.

2  Rev. Code § 19.86.010(1). Meratas has engaged in unfair or deceptive acts or

3  practices that have injured Ms. Reid and other Washington consumers. Wash.

4  Rev. Code § 19.86.160.

5      20.    Ms. Reid alleges on information and belief that the interests of all

6  Defendants have been so unified that their separate personalities no longer exist

7  and that if the acts of the corporate defendants are treated as those of the

8  corporation alone, an inequitable result will follow.

9                    **IV.    BACKGROUND FACTS**

10      21.    Ms. Reid is 22 years old. She graduated from Lewis and Clark High

11  School in Spokane, Washington in 2018 and attended courses at North Idaho

12  College, a community college in Coeur d'Alene, Idaho. She was working as a dance

13  teacher in Spokane and thinking about applying to become certified as a surgery

14  technician when she learned about Prehired from a "Craigslist Jobs" posting.

15      22.    Ms. Reid was drawn into a scam that has cost her and countless

16  other Americans, including Washington residents, thousands of dollars.

17      23.    Ms. Reid's dealings with Prehired follow a pattern documented by

18  the Attorney General for the State of Delaware, which has commenced an

19  investigation into the claims and representations that Prehired makes to students

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 8

and potential students, including those relating to income share agreements. The Delaware AG wrote a letter to Chief Magistrate Judge Alan Davis, of the Justice of the Peace Court in Georgetown, Delaware where Prehired Recruiting, LLC—a company affiliated with Prehired and also owned by Jordan—filed nearly 300 lawsuits against consumers who signed Prehired ISAs. The lawsuits were filed by Joshua Jordan acting as "agent" for Prehired Recruiting. Exhibit B.

24.    The Delaware AG observes in the letter that "Prehired describes itself as a 'membership association' that provides 'training, mentoring and networking to help you land a full-time sales job in a business-to-business (B2B) software company within about 12 weeks—even with no previous sales or tech experience." Exhibit B.

25.    The letter also states that Prehired "claims that it only admits less than 5% [of] applicants, and that its program 'typically takes about 60-120 hours over 6-12 weeks (about 10 hours per week),' though the program is video-based and self-based." The Delaware AG states that it spoke to one student who "was able to complete the program in less than one week." Exhibit B.

26.    Before signing up for Prehired's program, Ms. Reid, who had no experience in software sales, visited Prehired's website, which touted "Your 6-figure Sales Career Starts Here." The website represented that Prehired members

"average $69,000 in their first year with 6-figure potential after that." The website

guaranteed that members would get a job "with zero upfront cost."

https://www.prehired.io.



27.    The website that Ms. Reid visited included Prehired's representation

that it admitted only less than 5% of applicants. Based on that representation,

Ms. Reid believed the program was a selective training program that would

provide the benefits of a college education without the time commitment.

28.    Ms. Reid filled out an online form to start the application process. In

response, on December 12, 2019 she received an email from Joshua Jordan, who

identified himself as the "founder and CEO of Prehired." Mr. Jordan wrote in the

email that he was "truly thankful and excited to share how to get into a 6-figure

software sales career for no upfront training cost—and with less stress than

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 10

1    you've got now." Mr. Jordan also provided Ms. Reid with instructions for getting

2    started with the program.

3        29.    On December 18, 2019, Ms. Reid received another email from Mr.

4    Jordan pitching the Prehired training program. Mr. Jordan told Ms. Reid in what

5    appears to be a form email that a man named Philip Jansen "made $130,000+ his

6    first year in sales…even though he has zero previous experience in sales or tech."

7    According to Mr. Jordan, "My Prehired training and mentoring program gave

8    Philip everything he needed to make 6 figures in his first year – and land a job at

9    his #1 company choice within 6 weeks." Mr. Jordan told Ms. Reid, "If you're not

10    making the money you want and getting the respect you deserve, let one of our

11    Admissions Advisors see if we can help you."

12        30.    On January 12, 2020, Mr. Jordan sent Ms. Reid a third form email,

13    asking her if she was "Ready to finally join the tech scene making 6-figures in a

14    software sales role?" Mr. Jordan made two offers to Ms. Reid. "Offer 1" allowed

15    her to pay $0 upfront for a 14-day free trial, and Prehired would pay $7,000 "for"

16    her toward her Income Share Agreement. Mr. Jordan told Ms. Reid that if she

17    applied, interviewed, and was accepted, she would Just need to start making

18    $250 monthly payments toward [her] ISA after [her] 14-day trial." "Offer 2"

19

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 11

1    allowed Ms. Reid to take the Science-Based Sales course "for only $4,997 or 3

2    payments of $1,997."



14        31.    Mr. Jordan followed up with Ms. Reid on January 15 and 16, 2020

15    with yet more emails, repeating the same "special offer" and noting that

16    Prehired's "average member grosses 73k in year 1 and $110k in year 2."

17        32.    As a result of Mr. Jordan's emails, and seeking to take advantage of

18    Prehired's alleged "special offer," Ms. Reid filled out an application to be

19    admitted to Prehired's training program.

20    CLASS ACTION COMPLAINT FOR DAMAGES
      AND INJUNCTIVE RELIEF - 12

1    33.    On February 12, 2020, a Prehired agent sent Ms. Reid an email,

2  telling her, "I seriously believe we can help you based on your application

3  answers" and that he had to hear from her "in the next 24 hours if you want a

4  real shot at this." The agent explained that Prehired's "system rejected you

5  because of "payment options", but "after a second look—you seem like the kind

6  of person we're looking for." The agent asked Ms. Reid to "Book an interview"

7  and noted that if they "both wanna work together after we talk, we'll see how to

8  make the money part work later."

9    34.    That day, Ms. Reid booked an interview with a person named Joshua

10  Santos. In the confirmation email, Mr. Santos stated, "First, congrats on being an

11  action taker. You're in the top 5% of people just for that reason."

12    35.    The interview took place the next day, on February 13, 2020. That

13  day, Ms. Reid received an offer of enrollment. To enroll, Ms. Reid was required to

14  sign two documents, a "Member Success Agreement" and the ISA. She also was

15  required to complete a "basics" assessment, which consisted of answering two

16  questions, within 48 hours.

17    36.    The ISA that Prehired presented to Ms. Reid for signature stated that

18  "Prehired has agreed to provide you with access to Prehired Science-Based Sales

19  (the 'Program'), in exchange for your promise to pay the Income Share during the

20

Contract Term." The ISA defined "Income Share" as 12.5% of earned income each month for up to a maximum number of Required Payments. In Ms. Reid's case, the ISA specified 48 Required Payments.

37.    The ISA set a "Minimum Threshold" of $40,000.00. The ISA states that payments "will not begin under the ISA" until your "gross-earnings meet or exceed the Minimum Threshold" and you "have completed (or withdrawn from) the Program." The ISA defines Minimum Threshold as "pre-tax annual Earned Income of less than $40,000.00 (equivalent to $3,333.33) on a monthly basis (the 'Monthly Minimum Threshold')."

38.    The ISA set a "Payment Cap" of $30,000.

39.    Under the ISA, Prehired has 96 months—eight years—to collect 48 required payments.

40.    Although the ISA sets the Income Share based on "earned income", monthly payments are calculated based on "estimated income" for the calendar year. In other words, if a Prehired "graduate" may earn additional income in commissions, the monthly payments are calculated based on that potential income rather than "earned income" as required by the agreement.

41.     Each year, Prehired is supposed to "reconcile" the amounts paid with the amounts owed under the ISA. Prehired then applies any overpayments "as a credit toward future payments due."

42.     The ISA contains a provision stating that the parties "irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the Southern District of New York and New York state courts located in New York City and waive any objection to transferring any action, suit or proceeding arising out of this Agreement to such court."

43.     The ISA also includes a "governing law" clause specifying the laws of the State of New York, without giving effect to principles of conflicts of law.

44.     The ISA designates Meratas as Prehired's "agent" to "manage the customer portal."

45.     Under the ISA, Meratas has the "authority to act on behalf of" Prehired, including to verify Prehired members' employment status, monitor their earned income, process payments, and perform account reconciliations.

46.     The ISA is a consumer student loan product within the meaning of Wash. Rev. Code § 28C.10.050(3).

47.     On February 14, 2020, Ms. Reid completed her initial "assessment." The next day, on February 15, 2020, Ms. Reid received an email from Mr. Jordan

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 15

1  welcoming her as a new member of Prehired's Training and Job Placement

2  Program and providing instructions to create an account and start the program.

3  The instructions also included a "coupon" to receive "100% off" and instant

4  access to the program.

5      48.    On February 15, 2020, Ms. Reid received a "receipt" for her order

6  indicating "no charge" and that she had received a "100% discount for Prehired

7  Science-Based Sales" off the $30,000 price. She also received an executed copy of

8  her ISA.

9      49.    Ms. Reid finished viewing Prehired's training videos in just over a

10  month.

11      50.    Mr. Jordan remained involved during that time, checking in by email

12  to see what Ms. Reid liked about the program and asking for feedback. When Ms.

13  Reid completed the coursework, Mr. Jordan sent her an email letting her know

14  that she was "ready to start the certification."

15      51.    Over the course of the next ten weeks Ms. Reid applied for jobs

16  without success. On July 8, 2022, Ms. Reid signed an independent contractor

17  agreement with Pipestry, LLC to work as a "cold caller" for $20 per hour plus a

18  maximum commission of $500 per month.

19

20
CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 16

52. That day, Prehired sent Ms. Reid an email with instructions on how to report her income to Meratas.

53. Mr. Jordan also sent Ms. Reid an email on July 8, 2020 offering her $100 off her ISA is she put on a Prehired t-shirt, printed out her job offer letter, and took a selfie.

54. Ms. Reid received a "Certificate of Achievement" signed by Mr. Jordan.

55. On July 20, 2020, Prehired sent Ms. Reid an email asking her to update her income for her ISA with Meratas. Prehired's email informed Ms. Reid that Meratas did not have "separate boxes" for base pay and commissions so she had to estimate her yearly income. To estimate, Prehired instructed Ms. Reid to "multiply this month's pre-tax commission by 12. Then add that to your yearly pre-tax base salary and input the total."

56. Ms. Reid worked for Pipestry for approximately one month, earning $3,260, which did not satisfy the Minimum Monthly Threshold requiring a payment under the ISA.

57. On August 24, 2020, Ms. Reid commenced work as a Sales Development Representative for Royal 4 Systems, earning $18.25 per hour with

1  optional overtime and commissions. She worked for Royal 4 Systems for two

2  months, but then was laid off.

3      58.    During the two months she worked for Royal 4 Systems, Ms. Reid's

4  income never exceeded the minimum monthly threshold which would trigger

5  payments under the ISA.

6      59.    After she was laid off from Royal 4 Systems, Ms. Reid spent the next

7  several months unsuccessfully searching for jobs.

8      60.    On May 18, 2021, Ms. Reid returned to work for Pipestry as a "Cold

9  Calling Specialist." She was paid a salary of $37,440 per year, which is less than

10  the minimum threshold on the ISA. As a Cold Calling Specialist she also was

11  eligible for monthly commissions.

12      61.    Ms. Reid left Pipestry in August 2021, accepting a job as an Executive

13  Administrative Assistant for Array Real Estate. Her annual income is $39,295.

14      62.    In the two years since she completed her Prehired training program,

15  Ms. Reid has never earned more than $40,000 per year.

16      63.    In the two years since she completed her Prehired training program,

17  Ms. Reid has never earned more than $3,333.33 per month.

18

19

20

1   64.    Although she has never exceeded the minimum thresholds under the

2   ISA, Defendants required Ms. Reid to pay, and she has paid, a total of $3,944.46

3   to Defendants in ten monthly payments.

4   65.    The monthly payments that Ms. Reid paid to Defendants exceeded

5   12.5% of her earned income for each month they were made.

6   66.    Ms. Reid has never received an Annual Account Reconciliation under

7   the ISA.

8   **V.    CLASS ALLEGATIONS**

9   67.    Ms. Reid brings this action on behalf of herself and the following

10  proposed Class:

11  All Washington residents who signed an agreement with
    Prehired LLC in substantially the form of Exhibit A and
12  paid any money to Prehired, Joshua Jordan, or Meratas
    Inc. at any time starting four years preceding the filing of
13  this action.

14  68.    The proposed Class is so numerous that joinder is impracticable

15  under Federal Rule of Civil Procedure 23(a)(1). On information and belief, there

16  are at least sixteen current Prehired "members" who reside in Washington.

17  According to the Delaware Attorney General, Prehired has sued in Delaware state

18  court approximately six additional Washington residents to collect amounts

19  allegedly owed pursuant to ISAs.

20  CLASS ACTION COMPLAINT FOR DAMAGES
    AND INJUNCTIVE RELIEF - 19

69.  <u>Common questions of law and fact exist as to all members of the proposed Class under Federal Rule of Civil Procedure 23(a)(2)</u>. These common questions include:

a.  Whether Prehired is a "private vocational school" within the meaning of Wash. Rev. Code § 28C.10.020(7);

b.  Whether Prehired is a "person" within the meaning of Wash. Rev. Code § 19.86.010;

c.  Whether Jordan is an "agent" within the meaning of Wash. Rev. Code § 28C.10.020(7) and Wash. Rev. Code § 28C.10.050(3);

d.  Whether Jordan is a person" within the meaning of Wash. Rev. Code § 19.86.010;

e.  Whether Meratas is an "agent" within the meaning of Wash. Rev. Code § 28C.10.050(3);

f.  Whether Meratas is a person" within the meaning of Wash. Rev. Code § 19.86.010;

g.  Whether Prehired is or has ever been licensed to operate as a private vocational school in Washington as required by Wash. Rev. Code § 28C.10.060;

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 20

1          h.     Whether Prehired has conducted business of any kind, made

2   any offers, advertised or solicited, or entered into any contracts with Washington

3   residents without obtaining the license required by Wash. Rev. Code §

4   28C.10.060;

5          i.     Whether Prehired has engaged in unfair business practices

6   within the meaning of Wash. Rev. Code § 28C.10.110(2);

7          j.     Whether Prehired failed to satisfy the minimum standards for

8   private vocational schools described in Wash. Rev. Code § 28C.10.050(2);

9          k.     Whether Prehired has violated Wash. Rev. Code § 19.86 *et seq.*

10          l.     Whether Jordan has engaged in unfair business practices

11   within the meaning of Wash. Rev. Code § 28C.10.110(2);

12          m.     Whether Jordan has failed to satisfy the minimum standards

13   for private vocational schools described in Wash. Rev. Code § 28C.10.050(3);

14          n.     Whether Jordan has violated Wash. Rev. Code § 19.86 *et seq.*;

15          o.     Whether Meratas has engaged in unfair business practices

16   within the meaning of Wash. Rev. Code § 28C.10.110(2);

17          p.     Whether Meratas has failed to satisfy the minimum standards

18   for private vocational schools described in Wash. Rev. Code § 28C.10.050(3);

19

20
CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 21

1        p.        Whether Meratas has violated Wash. Rev. Code § 19.86 *et*

2    *seq.*;

3        70.    <u>Ms. Reid's claims are typical of those of the proposed Class as</u>

4    <u>required by Federal Rule of Civil Procedure 23(a)(3)</u>. Ms. Reid signed an ISA with

5    Prehired that is materially the same as the agreement signed by other members

6    of the proposed class.

7        71.    <u>Ms. Reid is an adequate representative of the proposed Class under</u>

8    <u>Federal Rule Civil Procedure 23(a)(4)</u>. She will fairly and adequately protect the

9    interests of the Class. Ms. Reid has retained competent and capable attorneys

10    who are experienced trial lawyers with significant experience in complex and class

11    action litigation. Ms. Reid and her counsel are committed to prosecuting this

12    action vigorously on behalf of the Class and have the financial resources to do so.

13    Neither Ms. Reid, nor her counsel, have interests that are contrary to or that

14    conflict with those of the Class.

15        72.    <u>Declaratory and injunctive relief are appropriate as to the Class</u>

16    <u>under Federal Rule of Civil Procedure 23(b)(2)</u>. Defendants have acted on grounds

17    generally applicable to the Class, making declaratory and final injunctive relief

18    appropriate with respect to the Class as a whole.

19

20
CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 22

1   73.   <u>Common issues predominate over any individualized issues and a</u>

2   <u>class action is superior to individual litigation under Federal Rule of Civil</u>

3   <u>Procedure 23(b)(3)</u>. The common and overriding questions are whether

4   Defendants have engaged in common courses of conduct that is unfair or

5   deceptive or that violate Wash. Rev. Code § 28C.10 *et seq.* Defendants' conduct is

6   uniform to all members of the Class. Ms. Reid and members of the Class have

7   suffered harm and damages as a result of Defendants' conduct. Absent a class

8   action, however, most Class members likely would find the cost of litigating their

9   claims prohibitive.

10   **FIRST CLAIM FOR RELIEF**
**_Per se_ violation of the Washington Consumer Protection Act**

11   **Wash. Rev. Code § 19.86 *et seq.***

12   74.   Plaintiff realleges and incorporates by reference each and every

13   allegation set forth in the preceding allegations.

14   75.   Defendants are "persons" within the meaning of the Washington

15   Consumer Protection Act, Wash. Rev. Code § 19.86.010(1), and conduct "trade"

16   and "commerce" within the meaning of the Washington Consumer Protection

17   Act, Wash. Rev. Code §19.86.010(2).

18   76.   Defendant Prehired is a "private vocational school" within the

19   meaning of Wash. Rev. Code § 28C.10.020(7) because it offers postsecondary

20   CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 23

education for the purpose of instructing, training, and preparing persons to become software sales representatives.

77.    Defendant Jordan is an "agent" of Prehired within the meaning of Wash. Rev. Code § 28C.10.020(2) and Wash. Rev. Code § 28C.10.050(3) because (a) he owns an interest in Prehired and personally attempts to secure Washington residents' enrollment, including Plaintiff, in the Prehired training program and (b) he is an officer of Prehired who works on behalf of the institution.

78.    Defendant Meratas is an "agent" of Prehired within the meaning of Wash. Rev. Code § 28C.10.050(3) because Meratas is a contractor working on behalf of Prehired to manage the ISAs, which are consumer student loan products used to fund Prehired's postsecondary training program and which financially benefit the owners of Prehired.

79.    Plaintiff and Class members are "persons" within the meaning of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010(1).

80.    A violation of Wash. Rev. Code § 28C.10 et seq. affects the public interest and is an unfair or deceptive act or practice in violation of Wash. Rev. Code § 19.86.020 of the Washington Consumer Protection Act. Wash. Rev. Code § 28C.10.210; *see also* Wash. Rev. Code § 28C.10.130.

81.     Defendants engaged in conduct prohibited by Wash. Rev. Code §

28C.10 et seq. Defendants' violations include but are not limited to the following:

a.     Wash. Rev. Code § 28C.10.060 requires entities desiring to

operate a private vocational school to obtain a license. On information and belief,

Defendant Prehired did not obtain a license to operate in the state of

Washington.

b.     Wash. Rev. Code § 28C.10.090 prohibits private vocational

schools, whether located in Washington State or outside Washington State, to

conduct business of any kind, make any offers, advertise or solicit, or enter into

any contracts unless the private vocational school is licensed under Wash. Rev.

Code § 28C.10.060. On information and belief, Prehired conducted business,

made offers, advertised or solicited, and entered into contracts without the

license required by Wash. Rev. Code § 28C.10.060.

c.     Wash. Rev. Code § 28C.10.110(2)(c) provides that it is an unfair

business practice for an entity operating a private vocational school or an agent

employed by a private vocational school to "[a]dvertise in the help wanted

section of a newspaper or otherwise represent falsely, directly or by implication,

that the school is an employment agency, is making an offer of employment or

otherwise is attempting to conceal the fact that what is being represented are

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 25

1    course offerings of a school." On information and belief, Defendant Prehired

2    engaged in unfair business practices within the meaning of this section by

3    advertising its training program in the Craigslist Jobs section and thereby

4    suggesting that it was an employment agency rather than a school.

5          d.      Wash. Rev. Code § 28C.10.110(2)(h) provides that it is an

6    unfair business practice to "[p]rovide prospective students with: Any testimonial,

7    endorsement, or other information that a reasonable person would find likely to

8    mislead or deceive prospective students or the public, including those regarding

9    current practices of the school; … current conditions for employment

10   opportunities; postgraduation employment by industry or probable earnings in

11   the occupation for which the education was designed; [and] total cost to obtain a

12   diploma or certificate." Defendants Prehired and Jordan violated this provision by

13   providing Plaintiff and Class members with testimonials that misleadingly

14   suggested that they would be able to secure a "six-figure" salary in software sales

15   within the first two years of completing the Prehired training program.

16         e.      Wash. Rev. Code § 28C.10.110(2)(j) provides that it is an unfair

17   business practice to "[m]ake or cause to be made any statement or

18   representation in connection with the offering of education if the school or agent

19   knows or reasonably should have known the statement or representation to be

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 26

1    false, substantially inaccurate, or misleading." Defendants Prehired and Jordan

2    violated Wash. Rev. Code § 28C.10.110(2)(j) by making false, substantially

3    inaccurate, or misleading statements about the nature of Prehired's training

4    program and the ISAs, and the amount of money graduates could earn upon

5    completion of the Prehired training program. Defendant Meratas violated Wash.

6    Rev. Code § 28C.10.110(2)(j) by making false, substantially inaccurate, or

7    misleading statements about the amount of money Prehired graduates owed

8    under the ISAs.

9            f.      Wash. Rev. Code § 28C.10.110(2)(k) provides that it is an unfair

10   business practice to "[e]ngage in methods of advertising, sales, collection, credit,

11   or other business practices which are false, deceptive, misleading, or unfair…."

12   Defendants have violated this section by inducing Plaintiff and Class members to

13   enter into ISAs by representing, among other things, that Plaintiff and Class

14   members' payments on the ISAs will be "waived" when they are earning less than

15   $40,000 per year, (equivalent to $3,333.33 on a monthly basis), and then

16   collecting payments from students even though Plaintiff and Class members'

17   earned income fell below the minimum threshold.

18           g.      Wash. Rev. Code § 28C.10.110(2)(m) provides that it is an

19   unfair business practice for a private vocational school or its agent to "[v]iolate

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 27

1    RCW 28C.10.050(3) regarding the sale of, or inducing of students to obtain,

2    specific consumer student loan products." Wash. Rev. Code § 28C.10.050(3)

3    provides that a private vocational school … that has not had at least one of its

4    programs recognized by the [WTECB] for at least two consecutive years, may not

5    engage in any practice regarding the sale of, or inducing of students to obtain,

6    specific consumer student loan products to fund education that financially

7    benefits any person or entity that has an ownership interest in the institution,

8    unless the institution can demonstrate to the agency that the student has

9    exhausted all federal aid options and has been denied noninstitutional private

10   commercial loan products. Defendants Prehired, Jordan, and Meratas violated

11   this section by inducing Plaintiff and Class members to fund their Prehired

12   educations through ISAs, by collecting payments on those ISAs, and by benefitting

13   financially from the ISAs even though Prehired never obtained the proper licenses

14   required by Wash. Rev. Code § 28C.10.060.

15        h.    Wash. Rev. Code § 28C.10.050(2) sets forth minimum

16   standards for entities operating private vocational schools, including that the

17   school and its agents must discuss "with each potential student the potential

18   student's obligations in signing any enrollment contract and/or incurring any debt

19   for educational purposes. The discussion shall include the inadvisability of

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 28

1   acquiring an excessive educational debt burden that will be difficult to repay

2   given employment opportunities and average starting salaries in the potential

3   student's chosen occupation." Wash. Rev. Code § 28C.10.050(2)(h). Defendants

4   Jordan and Prehired violated this provision by failing to have those discussions

5   with Plaintiff and Class members.

6         i.      Wash. Rev. Code § 28C.10.170 provides, "If a student or

7   prospective student is a resident of this state at the time any contract relating to

8   payment for education or any note, instrument, or other evidence of

9   indebtedness relating thereto is entered into, RCW 28C.10.180 shall govern the

10  rights of the parties to the contract or evidence of indebtedness. Wash. Rev. Code

11  § 28C.10.180 provides, "A note, instrument, or other evidence of indebtedness or

12  contract relating to payment for education is not enforceable in the courts of this

13  state by a private vocational school or holder of the instrument unless the private

14  vocational school was licensed under this chapter at the time the note,

15  instrument or other evidence of indebtedness or contract was entered into."

16  Plaintiff and Class members were residents of Washington State when they

17  entered into the ISAs. At the time Plaintiff and Class members entered into the

18  ISAs, Prehired was not licensed as required under Washington law. Therefore the

19  ISAs are void and unenforceable.

20

CLASS ACTION COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF - 29

82.     Wash. Rev. Code § 28C.10.170 further provides that if a contract or evidence of indebtedness contains an agreement that the law of another state shall apply or that the maker or any person liable on the contract or evidence of indebtedness consents to the jurisdiction of another state, or that fixes venue, that contract or evidence of indebtedness "is voidable at the option of the student or prospective student." The ISAs that Plaintiff and Class members executed contain choice of law and choice of venue provisions selecting New York law and New York courts. Under Wash. Rev. Code § 28C.10.170, the contracts are voidable.

83.     The acts alleged in this Complaint are ongoing or have a substantial likelihood of being repeated.

84.     As a direct and proximate result of Defendants' unfair acts or practices, Plaintiff and Class members suffered injury to their business or property and lost money.

85.     Plaintiff and the Class are therefore entitled to an order enjoining the conduct complained of herein; declaring the ISAs void and unenforceable; actual damages; treble damages pursuant to RCW 19.86.090; costs of suit including reasonable attorneys' fees; and such further relief as the Court may deem proper.

**SECOND CLAIM FOR RELIEF**
**Violation of the Washington Consumer Protection Act—Unfair**
**or Deceptive Acts or Practices**

86.     Plaintiff realleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs.

87.     Washington's legislature has declared that the Consumer Protection

Act should be liberally construed so that its beneficial purpose of protecting

consumers from unfair, deceptive and fraudulent acts or practices be served.

Wash. Rev. Code § 19.86.920.

88.     Persons like Prehired, Meratas, and Jordan illicitly profit by

promoting education classes that supposedly will allow student to achieve a "6-

Figure Sales Career in 12 Weeks". Instead, they follow a common scheme in which

a "14-day free trial" leads to a few-week, worthless training course that ultimately

costs tens of thousands of dollars and years of hassle.

89.     The entire process by which Defendants sign consumers up for

Prehired's training courses, induce consumers to enter into misleading ISAs, and

collect onerous payments even when minimum earning thresholds are not met is

unfair or deceptive. Their specific unfair or deceptive acts or practices include but

are not limited to the following:

1         a.     Defendant Prehired advertises its training program on

2   Craigslist's Job board, misleading consumers into believing it is an employment

3   agency instead of an educational institution.

4         b.     Defendant Prehired's website misleading states that it

5   provides training to help students land a job in software sales within twelve

6   weeks, even if the consumer does not have any previous sales or tech experience.

7         c.     Defendants Prehired and Jordan misleadingly represent that

8   Prehired admits less than 5% of applicants, making consumers believe that they

9   are attending a highly selective training program.

10        d.     Defendants Prehired and Jordan misleadingly represent that

11  students will be able to "land a 6-figure software sales career."

12        e.     Defendants Prehired and Jordan induce consumers into

13  misleading and onerous ISAs that falsely represent the consumers will only have

14  to make payments if their earned income exceeds a minimum threshold. In

15  reality, Defendants require Prehired graduates to make payments even if their

16  earned income is below the minimum threshold. In the event a payment is not

17  required, Defendants say the payment is only "deferred" until the minimum

18  threshold is exceeded (and not waived).

19

20  CLASS ACTION COMPLAINT FOR DAMAGES
    AND INJUNCTIVE RELIEF - 32

f.    Defendant Meratas designed, monitors, and collects unfair and deceptive payments under the ISAs.

90.    Defendants unfair and deceptive acts and practices occurred in trade or commerce and injured or had the capacity to injure others.

91.    Defendants' general course of conduct as alleged in this Complaint impacts the public interest.

92.    Defendant Jordan directed or participated in all of Defendants Prehired and Meratas's unfair or deceptive conduct.

93.    The acts complained of in this Complaint are ongoing or have a substantial likelihood of being repeated.

94.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and Class members suffered injury to their business or property and lost money.

95.    Plaintiff and the Class are therefore entitled to an order declaring the ISAs null and void; enjoining the conduct described in this Complaint; actual damages; treble damages pursuant to Wash. Rev. Code §19.86.090, costs of suit, including reasonable attorneys' fees; and such further relief as the Court may deem proper.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A.    For certification of the proposed Class as defined above;

B.    For an order appointing Plaintiff as representative of the Class and the law firms of Terrell Marshall Law Group PLLC and Werman Salas P.C. as Class Counsel;

C.    For a trial by jury;

D.    For a declaration that Plaintiff and Class members' ISAs are null and void;

E.    For injunctive and declaratory relief prohibiting all of Defendants' unfair or deceptive conduct, including by prohibiting them from:

      i.    Failing to comply with all provisions of Wash. Rev. Code 28C.10 *et seq.*;

      ii.    Entering into ISAs with residents of the State of Washington;

      iii.    Engaging in any activities designed to collect amounts allegedly owed under the illegal agreements;

      iv.    Misrepresenting in contracts and communications that consumers can earn specific amounts after undergoing Prehired's training program.

1      F.      For an award of disgorgement of all amounts Plaintiff and Class

2    members paid under the ISAs during the class period;

3      G.      For an award of actual damages;

4      H.      For an award of treble damages as allowed by Washington law;

5      I.      Attorneys' fees and costs of suit, including expert witness fees, and

6    prejudgment interest;

7      J.      The ability to amend this Complaint to conform to the evidence

8    obtained during the course of this action; and

9      K.      Such other relief as the Court deems just and proper.

10      RESPECTFULLY SUBMITTED AND DATED this 15th day of April, 2022.

11                                  TERRELL MARSHALL LAW GROUP PLLC

12                                  By: /s/ Jennifer Rust Murray, WSBA #36983
                                       Jennifer Rust Murray, WSBA #36983

13
                                    By: /s/ Blythe H. Chandler, WSBA #43387
14                                     Blythe H. Chandler, WSBA #43387

15                                  Attorneys for Plaintiff
                                    936 North 34th Street, Suite 300
16                                  Seattle, Washington 98103-8869
                                    Telephone: (206) 816-6603
17                                  Facsimile: (206) 319-5450
                                    Email: jmurray@terrellmarshall.com
18                                  Email: bchandler@terrellmarshall.com

19

20
     CLASS ACTION COMPLAINT FOR DAMAGES
     AND INJUNCTIVE RELIEF - 35

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Douglas M. Werman, *pro hac vice forthcoming*
Maureen A. Salas, *pro hac vice forthcoming*
WERMAN SALAS P.C.
Attorneys for Plaintiff
77 W. Washington, Suite 1402
Chicago, Illinois 60602
Telephone: (312) 419-1008
Facsimile: (312) 419-1025
Email: dwerman@flsalaw.com
Email: msalas@flsalaw.com